UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL PATRICK KLAHN,<br><br>            Plaintiff,<br><br>    v.<br><br>ALAMEDA COUNTY SHERIFF'S DEPT.,<br>et al.,<br><br>            Defendants. | Case No.  16-cv-00833-JCS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 34, 35 |

## I.    INTRODUCTION

Plaintiff Daniel P. Klahn Sr. brings this action against several government officials and entities alleging violations of his constitutional rights after his arrest in Dublin, California.  The Court granted Klahn's application to proceed in forma pauperis and, in two orders, dismissed several of his claims pursuant to 28 U.S.C. § 1915(e)(2).  The Court also permitted Klahn to proceed on claims against some defendants.  Having been properly served, two of those defendants—the County of Alameda and San Diego County Assistant District Attorney Anna Winn—now move separately to dismiss the claims against them asserted in Klahn's First Amended Complaint.  The Court heard the motions on January 27, 2017, at 9:30 a.m.  For the reasons discussed below, the Court GRANTS the motions to dismiss with leave for Klahn to amend two of his due process claims asserted against the County of Alameda.[1]

## II.    BACKGROUND

### A.    Procedural History

On February 19, 2016, Klahn filed an original Complaint, dkt. no. 1, and a motion for

---

[1] Klahn and the moving defendants have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).  Because no other party has been served or appeared, the consent of these parties is sufficient for the undersigned to evaluate these defendants' motions.

leave to proceed in forma pauperis, dkt. no. 2.  The Court granted Klahn's in forma pauperis motion and conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2).  *See* Order re Sufficiency of Compl. ("Compl. Order," dkt. no. 16) at 1.[2]

During that initial review, the Court permitted some of Klahn's claims to proceed. Relevant here, the Court determined that, "taking Klahn's allegations as true, Winn participated in violating Klahn's right to be free of unreasonable seizure under the Fourth Amendment by instructing police officers to arrest him at his home without a warrant." *Id.* at 12.  Under those allegations, the Court permitted Klahn to proceed on a 42 U.S.C. § 1983 claim against Winn.  *Id.* However, the Court dismissed with prejudice claims against Winn to the extent that they were based on her conduct as a prosecutor.  *Id.* at 11.

The Court also dismissed Klahn's claims against the Alameda County Sheriff's Department and the Santa Rita Jail[3] because he had not alleged that their improper conduct stemmed from an official policy or custom, and his conclusory assertions that they failed to adequately train their employees were not supported by sufficient allegations to state a plausible claim.  *Id.* at 13–15.  The Court granted Klahn leave to amend his claims against Alameda County. *Id.* at 15.

On August 1, 2016, Klahn filed a First Amended Complaint (the "FAC"), described below in detail.  FAC (dkt. no. 18).  As with the original Complaint, the Court reviewed the FAC under 28 U.S.C. § 1915(e)(2).  *See* Order re Sufficiency of FAC ("FAC Order," dkt. no. 21).[4]

Upon review of Klahn's new allegations, the Court permitted him to proceed on certain claims against Winn and Alameda County without prejudice to any argument raised after service. *See id.* at 12.  In respect to Winn, the Court recognized two sufficient claims: (1) that Winn directed police officers to arrest Klahn without a warrant in violation of his constitutional rights;

---

[2] *Klahn v. Dublin Police Dep't*, No. 16-cv-00833-JCS, 2016 WL 3682545 (N.D. Cal. July 12, 2016).  Citations to the Court's previous orders refer to the page numbers of the versions appearing in the Court's ECF docket.
[3] Because the Alameda County Sheriff's Department and the Santa Rita Jail cannot be sued as individual entities, all claims asserted against them are deemed to be asserted against the County of Alameda ("Alameda County").  *See* Cal. Gov't Code §§ 23000, 23004(a).
[4] *Klahn v. Dublin Police Dep't*, No. 16-cv-00833-JCS, 2016 WL 5908919 (N.D. Cal. Oct. 11, 2016).

United States District Court
Northern District of California

1 | and (2) that Winn testified falsely during bail proceedings in violation of Klahn's due process

2 | rights. *Id.* at 5–6, 12. The Court also found that Klahn had stated a sufficient due process claim

3 | pursuant to Alameda County's alleged failure to provide him with his statutory right to a telephone

4 | call under California Penal Code § 851.5(a)(1). *See id.* at 8–10. Because that claim was sufficient

5 | to warrant service, the Court permitted Klahn's other claims against Alameda County to proceed

6 | without further consideration. *See id.* at 10. Having been served, Winn and Alameda County now

7 | move separately to dismiss all claims that Klahn asserts against them.

8 | **B.    First Amended Complaint**

9 | The allegations described below pertain only to Klahn's claims against Winn and Alameda

10 | County. Factual allegations are taken as true at this initial pleading stage, and are therefore recited

11 | here as though they are true.[5] Furthermore, nothing in this Order should be interpreted as

12 | resolving any of Klahn's claims against another party or factual issues that may be disputed at a

13 | later stage.

14 | **1.    Investigation**

15 | In 2013, non-party Detective Aaron Dobbs—apparently of the San Diego Police

16 | Department—spoke to Klahn by telephone regarding a $1,250 check that Klahn had cashed. FAC

17 | at 58.[6] Klahn stated to Dobbs that he had held a job where he recovered unclaimed funds slated to

18 | escheat to the state, and a Mr. Meyerson, with whom he worked, had agreed that Klahn could keep

19 | ten percent of the funds he recovered. *Id.* Dobbs told Klahn that the check was forged, and Klahn

20 | responded that he often received authority from Meyerson via email to sign checks on Meyerson's

21 | behalf, although Klahn did not recall the circumstances of that specific check. *Id.* Klahn said that

22 | he did not think Meyerson would want to take Klahn to court because Klahn was aware of illegal

23 | conduct by Meyerson and other damaging information that would come to light in court

24 | proceedings. *Id.* Klahn said that he would meet with Dobbs when he visited San Diego the next

25 |

26 |

27 |

28 |

United States District Court
Northern District of California

---

[5] As explained below, the Court may also consider extrinsic material that is properly the subject of judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).

[6] Despite the Court's admonishment, Klahn failed to use short, continuously numbered paragraphs in the FAC. *See* FAC Order at 5 n.4. To avoid confusion, the Court cites the FAC and all other filings discussed herein according to their ECF page numbers.

1    week, but Dobbs was not at the police station when Klahn visited.  *Id.* at 58–59.  Klahn left Dobbs

2    a voice message but never heard from him again.  *Id.* at 59.

3         Sometime after Dobbs's investigation of Klahn, Winn set out to have him arrested.  *Id.*

4    at 59.  Before Klahn's arrest, Winn instructed the Dublin Police Department to arrest him "on the

5    first Saturday of the back-to-back holiday weekends."  *Id.* at 8.

6         **2.  Arrest**

7         On February 8, 2014, two officers of the Dublin Police Department came to Klahn's house

8    in Dublin, California, ostensibly to investigate a police report that Klahn had filed two to three

9    years before in Dublin.  FAC at 11.  Klahn told the officers that he had not filed such a report and

10   did not live in Dublin at the time.  *Id.*  The officers nevertheless repeatedly asked to come into the

11   house to discuss the report, and Klahn repeatedly refused to grant them permission to enter.  *Id.*

12   One officer asked to see Klahn's identification and followed him into the house when Klahn went

13   to retrieve his wallet, telling Klahn that he needed to stay with him for the officers' safety.  *Id.*

14   Klahn asked him to leave and the officer returned to the porch.  *Id.*

15        Klahn asked the officers if they had a warrant, and one officer responded that they did not

16   need one.  *Id.* at 11–12.  The officers did not respond to Klahn inquiring about "the real reason for

17   their visit."  *Id.* at 12.  One officer eventually said they would discuss the matter with Klahn if he

18   let them inside, but Klahn declined to do so.  *Id.*  The officers then pushed through the door and

19   restrained Klahn against a counter.  *Id.*  When Klahn asked again to see a warrant, one of the

20   officers produced "a business card size piece of paper with his name, and pick-up late on the

21   holiday weekend printed on it," and told Klahn that was the warrant.  *Id.* at 12.  In response to

22   questions from Klahn, the officers told him that he was under arrest and that they did not have to

23   inform him of the charges against him.  *Id.*  After arresting Klahn, the officers helped Klahn shut

24   down his computer and allowed him to get a jacket, and then escorted him to a police car and

25   drove him to the Santa Rita Jail.  *Id.*  Once there, around 9:45 p.m., one of the arresting officers

26   took Klahn to the booking area and asked him a series of questions regarding whether Klahn

27   participated in theft or check forgery in San Diego.  *Id.* at 13.  The officer did not inform Klahn of

28   his rights or of the charges against him.  *Id.* at 11–12.

United States District Court
Northern District of California

4

### 3.  Detention in Santa Rita Jail

The arresting officers left Klahn with a booking officer at the jail.  *Id.* at 13.  Klahn asked repeatedly to be allowed to call his attorney and family, but was told first that he could make a call after booking was complete, and then later told that he could make a call the next morning.  *Id.* at 13–14.  The booking officer also told Klahn that "San Diego" had not yet sent the arrest warrant, and that he did not know the exact charges against Klahn.  *Id.* at 13.  Klahn informed a medical intake officer that he was diabetic and needed medication, among other medical information.  *Id.*  The intake officer told Klahn that the medical department would see him in the morning, and sent him to a cell at 12:45 a.m. with a sack lunch and no medication, even after Klahn complained that he was not feeling well and needed insulin.  *Id.* at 14.

At 6:00 a.m. the next morning, a nurse examined Klahn and determined that his "blood sugar . . . was over 200," but that he would have to see a doctor before he could receive medication.  *Id.* at 15.  Later that morning, Klahn asked to make a telephone call, but the officer on duty told him that he could not do so because a PIN had not been configured for him, and it would not be possible to set up a PIN at that time.  *Id.*

Klahn felt faint later that day, his feet swelled, and he became agitated.  *Id.*  An officer referred Klahn to the same nurse he saw in the morning, who measured his blood sugar level at "over 250" but again declined to give him medication and told him he would need to see a doctor.  *Id.* at 15–16.  According to Klahn, the next day—Monday, February 10, 2014—was a holiday, and no doctor was available.  *Id.* at 16.  Klahn became weak, dizzy, and more anxious.  *Id.*  On Tuesday, a doctor gave Klahn metformin but no insulin.  *Id.*  Klahn felt weak and had difficulty concentrating, and eventually experienced neuropathy and severe pain in his feet and hands.  *Id.*

Klahn continued to ask to make a telephone call, but a duty officer again told him that there was no way to assign a PIN to him.  *Id.*  Klahn's wife, unaware of his arrest, called the Dublin Police Department to file a missing person report, but was not informed that he had been arrested and was being held in jail.  *Id.*  Klahn contends that if he had been given a telephone call, he could have contacted an attorney and informed his family of his arrest, and might have been able to obtain medication or post bail.  *Id.*

### 4. Further Transportation and Detention

Klahn's transport from the Santa Rita Jail to San Diego started on Wednesday February 12, 2014. FAC at 17. The Orange County Sherriff's Department conducted the transport and Klahn was temporarily housed in Monterey County Jail and Orange County Jail before he arrived at Central Jail in San Diego. *Id.* at 17, 21–23. Although Klahn alleges that he suffered deprivations and mistreatment in these facilities, those allegations do not pertain directly to the claims against Winn or Alameda County. *See id.* at 17–24. The Court does not address those allegations that do not relate to Klahn's claims against Alameda County or Winn in this Order.

### 5. Court Proceedings

Klahn was arraigned on February 19, 2014, and appeared for a bail hearing on March 10, 2014. *Id.* at 24. At the bail hearing, Klahn contends that Winn misrepresented a motion that Klahn had filed on his own behalf as a letter that Klahn had sent to Winn admitting criminal conduct and describing a violent confrontation with the Dublin police officers who arrested him. *Id.* at 25. Klahn alleges:

> Winn testified . . . that she received a personal letter from [him] outlining violent behavior in his arrest, she testified to the factual evidence within an email allegedly sent by [him] to victim when she was aware that the email was disputed by [him] and proof existed on his laptop to substantiate the emails contents. She additionally gave testimony that [Klahn] was a flight risk because he lived out of county and she had spent a lot of money and time locating him . . . .

*Id.* at 8. Klahn objected to Winn's testimony, but the judge instructed him to remain silent. *Id.* at 26. Rather than disputing Winn's characterization of that document and of the purported email to Meyerson, as Klahn would have liked, Klahn's attorney requested that bail be set at $75,000. *Id.* Bail was set at $500,000, which Klahn could not afford to post. *Id.* at 24, 26.

### 6. Claims

Klahn's FAC generally asserts that all Defendants violated his constitutional rights as set forth in the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *See* FAC at 30–59. Klahn also enumerates separately a claim under 42 U.S.C. § 1983. The claims asserted against Winn and Alameda County that survived the Court's 28 U.S.C. § 1915(e)(2) reviews are described below.

a. Claims against Winn

The Court permitted Klahn to proceed on two claims against Winn, the first regarding Winn's alleged direction of police officers to arrest Klahn without a warrant, and the second regarding Winn's alleged testimony during a bail hearing. *See* FAC Order at 5–6, 12; *see also* FAC at 31–32. In support of his first claim against Winn, Klahn alleges that Winn gave the arresting officers "special instructions not normally dictated for arrest and without a warrant present and in hand . . . ." FAC at 34. As to his second claim, Klahn alleges that "Winn lied in Court and provided false statements . . . with the intent of keeping Klahn's bail high so Klahn would not be able to post and get out to defend himself." *Id.* at 35.

b. Claims against Alameda County

Klahn asserts each of his enumerated claims against Alameda County. Claiming that Alameda County violated his fourth amendment rights, Klahn alleges that "he asked for the warrant . . . at the booking Jail and was not presented at any time with the warrant or the charges against him." *Id.* at 30. Klahn also claims that his sixth amendment rights were violated, alleging that he was denied his right to contact and be represented by counsel for several days following his arrest. *Id.* (citing Cal. Penal Code §§ 975(c), 851.5(a)–(b), (d)–(f)). Citing the Eighth Amendment, Klahn claims that Alameda County subjected him to cruel and unusual punishment by failing to give him access to needed medication. *Id.* at 42–43, 50–51.

Klahn also claims that his fourteenth amendment due process rights were violated in several respects. First, he alleges that his arrest was warrantless and, as a result, his rights to be presented with a warrant or to be taken before a magistrate were violated. *Id.* at 32–34, 37 (citing Cal. Penal Code §§ 827, 849(a)–(b)). Second, he alleges that his right to three completed telephone calls was violated. *Id.* at 34 (citing Cal. Penal Code §§ 851.5(a), 976(c)). Third, he alleges that Alameda County failed to provide him with proper medical care. *See id.* at 36, 39. Klahn also references frequently a right to equal protection under the Fourteenth Amendment. *See id.* at 32–42.

Finally, Klahn asserts a violation of his rights under 42 U.S.C. § 1983, claiming that Alameda County's failure to permit him to make a phone call and provide him with adequate

United States District Court
Northern District of California

United States District Court
Northern District of California

1  medication deprived him of his rights.  *Id.* at 55–56.

2      **C.    Winn's Request for Judicial Notice and Motion to Dismiss**

3          Winn moves to dismiss Klahn's two claims against her.  Mot. to Dismiss FAC on Behalf

4  of Def. Anna Winn ("Winn Mot.," dkt. no. 35) at 1.  Before turning to her motion, the Court

5  describes Winn's Request for Judicial Notice ("RJN," dkt. no. 35-2) of two facts, which together

6  provide much of the legal bases for her motion.

7          **1.    Winn's Request for Judicial Notice**

8          The two facts for which Winn requests judicial notice pertain to a warrant issued for

9  Klahn's arrest in his underlying criminal case.  *See* RJN at 1.  First, she requests notice of the fact

10  that the warrant was issued on February 4, 2014.  *See id.*  Second, she requests notice of the fact

11  that the warrant set Klahn's bail at $500,000.  *See id.*  Winn supports these requests with a court-

12  certified copy of the order issuing a warrant for Klahn's arrest.  *See id.* at 3–5.

13          Klahn does not oppose Winn's request for judicial notice.  *See* Pl.'s Corrected Opp'n to

14  Def. Anna Winn Mot. to Dismiss ("Opp'n to Winn," dkt. no. 39) at 9; *see also* Winn's Reply

15  Mem. ("Winn Reply," dkt. no. 45) at 2.

16          **2.    Winn's Motion to Dismiss**

17          In her motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Winn first

18  addresses Klahn's claim of a fourth amendment violation for directing a warrantless arrest.  *See*

19  Mem. of P. & A. in Supp. of Def. Anna Winn's Mot. to Dismiss ("Winn Mem.," dkt. no. 35-1)

20  at 2.  Winn argues that, in fact, Klahn's February 8, 2014, arrest was not warrantless, but pursuant

21  to a warrant issued four days earlier.  *Id.* at 4 (citing RJN).  Winn also argues that Klahn's

22  complaints regarding the timing of his arrest have been rejected by the Supreme Court, and that

23  his argument is legally incorrect with respect to his complaints regarding the alleged failure to

24  arraign him within 48 hours of his arrest.  *Id.* at 4–5.

25          Second, Winn contends that the Court should dismiss Klahn's claim that Winn

26  impermissibly testified against him and caused his bail to be set at $500,000.  *Id.*  In support of

27  this argument, Winn first notes that the order issuing the warrant for Klahn's arrest set his bail at

28  $500,000.  *Id.* (citing RJN at 3–5).  Winn further asserts that she did not in fact testify at the

hearing in which Klahn sought bail reduction, but rather argued as a prosecutor. *Id.* Winn also argues that, even assuming Winn had testified at that hearing, she would be entitled to absolute immunity. *Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983)).

### 3. Klahn's Opposition

Responding to Winn's contentions regarding the claim that she directed a warrantless arrest, Klahn argues that the Fourth Amendment forbids arresting a suspect inside his home unless a warrant has been obtained or an exception to the warrant requirement applies. Opp'n to Winn at 3–4 (quoting *United States v. Nora*, 765 F.3d 1049, 1054 (9th Cir. 2014)). He further argues that he has alleged that "Winn provided specific instructions to Dublin Police on 'how to arrest' Klahn, i.e. 'Pick up on back to back holiday weekend, pick-up after 9:00 PM,'" and that those instructions for arrest and the arrest itself "took place without a warrant in hand." *Id.* at 3. With respect to this claim, Klahn concludes that "Winn participated in violating [his] right to be free of unreasonable seizure under the Fourth Amendment by instructing police officers to arrest him at his home without a warrant," acts that "'fall outside the scope of a prosecutor's absolute immunity' and therefore are grounds for relief . . . ." *Id.* at 4.

Addressing his claim that Winn testified improperly, Klahn argues that prosecutorial immunity from a 42 U.S.C. § 1983 claim is "reduced to mere qualified immunity where a prosecutor steps outside that role and instead, 'acts as a witness rather than as an advocate' by signing a sworn affidavit of probable cause." *Id.* at 2 (citing *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2013 WL 812425, at *5 (N.D. Cal. Mar. 5, 2013)). Klahn further argues that "Winn does not deny her lying during the bail hearing she denies testifying, but she does not deny or oppose the allegations that she stated to [the superior court judge] three (3) separate pieces of information in support of maintaining higher bail as fact, which means she testified to these supposed facts . . . ." *Id.* at 6. Klahn also states that he "is not alleging [Winn] requested the bail amount only that she used untrue statements presented by her factual testimony to maintain the amount of bail at $500,000 . . . ." *Id.* at 7–8.

In response to Winn's RJN, Klahn states that "Winn does not deny or even oppose the accusation that she directed the instructions to the Dublin Police with specific pick-up, times and

United States District Court
Northern District of California

United States District Court
Northern District of California

1    dates acting outside her scope of authority." *Id.* Klahn also argues that presentation of a warrant

2    is a reasonable manner to conduct an arrest, something both the police officers who arrested him

3    and the intake officers at the Santa Rita Jail failed to do. *Id.* at 5.

4              **4.  Winn's Reply**

5              In reply, Winn first reiterates that "there was no 'warrantless arrest' and therefore there is

6    no basis for Winn's liability for 'directing the warrantless arrest.'" Winn Reply at 2.  Winn further

7    argues that Klahn's arguments regarding the timing of his arrest lack a legal basis because the

8    Constitution does not recognize a "right to avoid arrest at night, on a weekend, or on a holiday."

9    *Id.* at 2.  Winn also points out that Klahn's allegations are implausible because the 2014 calendar

10   did not have a "back to back holiday weekend" during the relevant time period.[7] *Id.* at 3.

11             Winn also repeats her contention that she is absolutely immune from suit, "regardless [of]

12   whether her courtroom statements are deemed argument or testimony." *Id.* at 3.  Distinguishing

13   *Jianjun Xie*, 2013 WL 812425, Winn argues that Klahn has not alleged that Winn acted as a

14   complaining witness, only that she testified at a bail review hearing.  Winn Reply at 3 (citing

15   *Kalina v. Fletcher*, 522 U.S. 118 (1997)).  Winn further argues that witness immunity is not

16   limited to trial testimony, "and that witness testimony does not support any other [42 U.S.C.]

17   § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* at 4.

18        **D.    Klahn's Request for Judicial Notice**

19             In his opposition to Winn's motion, Klahn requests judicial notice of four facts: (1) that

20   Winn did not deny, dispute, or oppose the facts alleged in the FAC and she therefore accepts those

21   facts as true; (2) Klahn's arrest occurred on February 8, 2014, in his home, a warrant was not

22   present, and Winn directed the arresting officers to conduct the arrest at an inconvenient time; (3)

23   Winn instructed the arresting officers to conduct his arrest without a warrant; and (4) Winn does

24   not dispute that she violated Klahn's fourth amendment rights.  Opp'n to Winn at 11.

25             Winn opposes Klahn's request for judicial notice and argues that "Winn has not admitted

26

27   _____

28   [7] Specifically, Winn asserts, "A year 2014 calendar shows that the alleged date of arrest (February 8, 2014) was a Saturday, and the next Monday holiday (President's Day, February 17, 2014) was over a week after that."  Winn Reply at 3.

10

United States District Court
Northern District of California

1  Klahn's allegations, and does not do so now.  Winn is not required to admit or deny any of

2  Klahn's allegations at this stage of the case."  Winn Reply at 4.

3      **E.    Alameda County's Motion to Dismiss**

4          **1.    Alameda County's Motion**

5      Alameda County has also moved to dismiss Klahn's claims against it under Rule 12(b)(6).

6  Def. Cnty. of Alameda's Mot. to Dismiss and for More Definite Statement ("Cnty. Mot.," dkt. no.

7  34) at 9.  Before addressing Klahn's claims individually, Alameda County contends that Klahn

8  brought his claims improperly under constitutional provisions rather than 42 U.S.C. § 1983.  *Id.*

9  at 12, 15.  Alameda County also contends that, even if the Court construed those claims as brought

10  under § 1983, the claims fail.  *Id.* at 12–14.  In support of that contention, Alameda County argues

11  as follows.

12      Alameda County first contends that the FAC generally fails to comport with Rule 8's

13  requirement that a complaint must contain "short and plain" allegations.  *Id.* at 14 (citing

14  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)).  Alameda County asserts that the FAC is

15  "sprawling and incomprehensible," and contains extraneous allegations.  *Id.* at 14–15.  Alameda

16  County further asserts that the FAC's complexity renders Klahn's claims uncognizable and

17  otherwise deprives Alameda County of its opportunity to respond.  *Id.*

18      Next, Alameda contends that Klahn's fourth amendment claim fails.  Alameda County

19  argues that "there is no cognizable right to be presented with a warrant while being booked, or a

20  right to be informed of one's charges."  *Id.* at 15–16.  Alameda County also asserts that Klahn has

21  failed to establish that the acts of the Dublin Police Department officers who arrested him

22  constituted an action by Alameda County that caused the deprivation of his fourth amendment

23  rights.  *Id.* (citing *Leer v. Murphy*, 844 F.2d 629, 633 (9th Cir. 1988)).

24      Alameda County next contends that Klahn's sixth amendment claim fails because his right

25  to counsel had not yet attached.  According to Alameda County, since the Sixth Amendment's

26  right to counsel attaches at or after the initiation of criminal proceedings, Klahn's allegations that

27  judicial proceedings commenced after his detention in Santa Rita Jail defeats the claim.  *Id.* at 17–

28  18.

1    Turning to Klahn's eighth amendment claim, Alameda County argues that he was detained

2    in the Santa Rita Jail prior to his conviction and sentencing.  *Id.* at 19.  Therefore, according to

3    Alameda County, Klahn's right to protection from cruel and unusual punishment under the Eighth

4    Amendment had not yet attached.  *Id.*

5    Alameda County next addresses Klahn's fourteenth amendment claims.  First, Alameda

6    County argues that Klahn's due process claim that he was denied medical care fails because his

7    allegations do not establish that Alameda County officials were deliberately indifferent to his

8    serious medical needs.  *Id.* at 19–21.  Specifically, Klahn failed to allege that Alameda County

9    employees knew that there was an excessive risk to Klahn's health and safety and disregarded that

10   known risk.  *Id.* at 20.  Second, Alameda County asserts that Klahn's due process claim regarding

11   the failure to take him to a magistrate within 48 hours of his arrest fails because the 48-hour period

12   did not expire.  *Id.* at 21.  Third, Alameda County argues that Klahn failed to establish the

13   elements for an equal protection claim, including the allegation that he is a member of a protected

14   class who was subject to intentional discriminatory action by the state.  *Id.* at 22.

15   Alameda County also contends that, for each of his constitutional claims, Klahn failed to

16   allege that the violations resulted from policies or customs as required by *Monell v. New York City*

17   *Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  *See id.* at 17–19, 22.

18   Finally, with respect to its motion to dismiss, Alameda County contends that Klahn's state

19   law claims, if he asserted any,[8] fail for two reasons.  First, the state law claims are barred by

20   California's Government Claims Act ("CGCA").  Second, Klahn's FAC fails to assert a statutory

21   basis for tort liability under California law and, to the extent he asserts that Alameda County

22   violated the California Penal Code, the sections that Klahn cites do not provide a private cause of

23   action against a government entity.  *Id.* at 24–26.

24   In the alternative, Alameda County has also moved for a more definite statement under

25   Federal Rule of Civil Procedure 12(e).  *Id.* at 9.  Alameda County contends that it cannot discern

26

27   ───────────────

28   [8] Before asserting these arguments, Alameda County noted, "It is unclear [whether Klahn] is attempting to argue separate state law claims, or if he is citing to state law as support for his federal claims."  Cnty. Mot. at 15.

United States District Court
Northern District of California

1    the claims that Klahn is asserting against it as opposed to the claims Klahn asserted against other

2    defendants.  *Id.* at 26–27.

3              **2.   Klahn's Opposition**

4              Klahn's arguments in opposition to Alameda County's motion are largely contained in a

5    single, meandering paragraph in which he appears to address the enumerated summary of

6    arguments contained in the motion's introduction.  *See* Pl.'s Opp'n and Resp. to Def. Cnty. of

7    Alameda Mot. ("Opp'n to Cnty.," dkt. no. 41) at 2–7; *see also* Cnty. Mot. at 9–10.  For clarity, the

8    Court enumerates Klahn's arguments in accordance with the numbers that he assigned to them in

9    his brief.

10             1.      After referring to Rule 8, Klahn asserts that the Court has diversity jurisdiction

11   pursuant to 42 U.S.C. § 1983.  Opp'n to Cnty. at 2.

12             2.      Responding to the argument that he asserted his claims improperly, Klahn states

13   "Plaintiff asserts as his first basis right in the title of his first amended complaint 42 U.S.C.

14   [§] 1983 . . . ." *Id.*

15             3.      Addressing his fourth amendment claim, Klahn argues, "Since the complaint

16   alleges arrest in Plaintiff's home without the presence of an arrest warrant the Dublin Police

17   entered Klahn's home forcefully without the presence of a lawful arrest warrant and removed him

18   from his home without the benefit of knowing the charges contained in a lawful arrest warrant."

19   *Id.* at 2–3.

20             4.      Klahn argues that, with respect to his eighth amendment claim, he "may not have

21   been transferred to San Diego and suffered the 'Cruel and Unusual' Punishment" but for "Santa

22   Rita Jail violating [his] rights pursuant to" California Penal Code §§ 145, 849(a), 851.5(a), 976(c).

23   *Id.* at 3–4.  He also would have "avoided suffering 'Cruel and Unusual' punishment at the hands

24   of Monterey County" but for Santa Rita Jail's violations of his rights.  *Id.* at 4.  He further argues

25   that the "County of Alameda is responsible not for the direct 'Cruel and Unusual' punishment

26   suffered but County of Alameda is indirectly the cause, whether or not Klahn was a pre-detainee

27   or not his rights were violated."  *Id.*

28             5.      Regarding his sixth amendment claim, Klahn asserts that arrestees are provided

13

attorneys for arraignment and pretrial hearings, and they have a right to three phone calls under the California Penal Code. *Id.* Klahn then argues that "he asked repeatedly to see the warrant, asked what he was being arrested for, asked for his phone calls, asked for an attorney and Santa Rita Jail denied him all those inherent rights . . . ." *Id.* at 5.

6.       Klahn argues that, regarding his due process right to medical care, "[t]he Constitution does not make allowances for 'First Available Opportunity' Your county is required to have medical staff and a doctor available 24-hours per day . . . ." *Id.* at 5. He also asserts that the time in which he received medication did not constitute Alameda County's first available opportunity to provide it, and suggests that the medication he received was insufficient while stressing the severity of his medical conditions. *Id.* at 5–6.

7.       Turning to his due process claim for failing to bring him before a magistrate judge within 48 hours, Klahn argues that California Penal Code § 851.5 does not exclude weekends or holidays. He also argues that he "is not alleging that [Alameda County] did not bring him within 48-hours, they failed on all levels to even inform him of his right to be taken in Alameda County altogether." *Id.* at 7.

8.       Regarding his equal protection claim, Klahn states that he "is not alleging he is part of a protected class here, he is simple [*sic*] stating . . . he was denied his rights pursuant to the United States Constitution and the California Penal Code." *Id.*

9.       Regarding the CGCA, Klahn asserts that "Santa Rita Jail did not comply when requested by Klahn to file a complaint. Klahn wrote to Santa Rita Jail asking for the process and the forms, was denied even a response, during the stay no forms were readily available or visible in the containment area Klahn was kept." *Id.* at 7.

In response to Alameda County's alternative motion for a more definite statement, Klahn states that he would do so quickly and diligently. *Id.*

### 3.  Alameda County's Reply

In reply, Alameda County generally argues that Klahn failed to offer a meaningful opposition to its motion or meet his burden of showing how he could amend the FAC to cure its defects. Cnty. Reply at 1–2. Alameda County then turns to specific claims in the FAC and

United States District Court
Northern District of California

1    Klahn's assertions in his opposition.

2         Regarding the fourth amendment claim, Alameda County reiterates that the Fourth

3    Amendment does not contain a right to be presented with a warrant while being booked or a right

4    to be informed of one's charges after arrest.  *Id.* at 3.  Alameda County also argues that it is not

5    liable for actions taken by Dublin Police Department officers or constitutional deprivations that it

6    did not cause.  *Id.*

7         Alameda County next asserts that Klahn "does not dispute that he was a pre-trial detainee,

8    which precludes" his eighth amendment claim.  *Id.* at 4.  It also argues that Klahn seeks to hold

9    Alameda County liable for actions taken by Monterey, and therefore fails to demonstrate that

10   Alameda County caused the alleged constitutional deprivation.  *Id.*

11        Turning to his due process claim for failing to take him to a magistrate, Alameda County

12   asserts that Klahn's reading of California Penal Code § 825 is incorrect.  *Id.*  Specifically,

13   Alameda County argues that Saturdays are holidays under California law.  *Id.* (citing, *inter alia*,

14   *People v. Stewart*, 264 Cal. App. 2d 809, 814 (1968)).  Alameda County further asserts that,

15   during the time period Klahn alleges he was in custody, the statutory 48-hour period did not

16   expire.  *Id.*

17        Regarding the fourteenth amendment claim for violating Klahn's equal protection rights,

18   Alameda County asserts that Klahn has conceded that he failed to allege that he is a member of a

19   protected class.  *Id.* (citing Opp'n to Cnty. at 7).  Alameda County also argues that Klahn's claim

20   does not establish that he is in a "class of one."  *Id.* at 5.  Alameda County further argues that the

21   FAC does not allege facts pertaining to a discriminatory intent and otherwise falls short of

22   establishing an equal protection claim.  *Id.* at 4–5.

23        Alameda County next argues that, regarding his claim that his right to medical care was

24   denied, Klahn fails to cite law supporting his constitutional arguments or otherwise demonstrate

25   that Alameda County was indifferent to his medical needs, as such a claim requires.  *Id.* at 5

26   (citing *Williams v. Ralston*, CV 14-4522-UA (JEM), 2014 WL 3926990, at *5 (C.D. Cal. Aug. 12,

27   2014)).

28        Addressing Klahn's citations to state laws, Alameda County argues that Klahn has failed to

1   assert that he filed a complaint with Alameda County and his alleged request for complaint forms

2   from Santa Rita Jail does not excuse his failure to comply with the CGCA. *Id.* at 3.

3        Finally, Alameda County argues that Klahn conceded arguments that it made in its motion

4   by failing to address them in his opposition. *Id.* at 5. Those arguments are as follows: (1) the

5   FAC does not comport with Rule 8; (2) Klahn's constitutional claims are asserted improperly

6   through amendments, not 42 U.S.C. § 1983; (3) Klahn's sixth amendment claim fails because his

7   right to counsel had not yet attached; and (4) Klahn failed to establish liability for any of his

8   constitutional claims in accordance with *Monell*.[9] *Id.*

9   **III.   ANALYSIS**

10       **A.   Legal Standard**

11       Alameda County and Winn challenge Klahn's FAC under Rule 12(b)(6) of the Federal

12   Rules of Civil Procedure on the basis that he fails to state a claim on which relief can be granted.

13   "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

14   complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When

15   reviewing such a motion, the Court analyzes the operative complaint and takes "all allegations of

16   material fact as true and construe[s] them in the light most favorable to the nonmoving party."

17   *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on

18   the lack of a cognizable legal theory or on the absence of facts that would support a valid theory.

19   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

20       A plaintiff need not plead a prima facie case in order to survive a motion to dismiss

21   pursuant to Rule 12(b)(6). *Swierkiewicz*, 534 U.S. at 514–15; *see also Starr v. Baca*, 652 F.3d

22   1202, 1215–16 (9th Cir. 2011) (reaffirming the holding of *Swierkiewicz* in light of *Ashcroft v.*

23   *Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A complaint

24   must however "contain either direct or inferential allegations respecting all the material elements

25   

26   [9] Without first obtaining the Court's approval, Klahn filed a response to Alameda County's Reply. *See* dkt. no. 48. Such a filing is prohibited without first obtaining the Court's approval. *See* Civil L.R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval, except" objections to evidence submitted in a reply and statements notifying the court of a relevant judicial opinion published after the date the reply was filed.). Therefore, the Court declines to consider it.

27   

28   

United States District Court
Northern District of California

1    necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562

2    (emphasis omitted) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.

3    1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

4    of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

5    "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

6    enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on

7    its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court

8    to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

9    (quoting *Twombly*, 550 U.S. at 570).

10        As a general rule, the Court may not consider factual material extrinsic to the pleadings

11    when ruling on a motion under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(d).  The Court may,

12    however, consider extrinsic material that is properly the subject of judicial notice as long as the

13    facts noticed are "not subject to reasonable dispute."  *See Lee*, 250 F.3d at 688–89 (quoting Fed.

14    R. Evid. 201(b)).

15        **B.    Judicial Notice**

16        Under Federal Rule of Evidence 201(b)(2), the Court may take judicial notice of facts that

17    "can be accurately and readily determined from sources whose accuracy cannot reasonably be

18    questioned."  Pursuant to this rule, the Court may take judicial notice of a public record, but not

19    the truth of facts asserted in the record to the extent that they may be subject to reasonable dispute.

20    *See Lee*, 250 F.3d at 689.

21        Winn has requested that the Court take judicial notice of two facts pertaining to a warrant

22    issued for Klahn's arrest.  *See* Winn Mem. of P. & A. at 2.  Winn has supplied a court-certified

23    copy of the warrant showing that it was issued on February 4, 2014, and that bail was set at

24    $500,000.  *See* RJN at 3–5.  Klahn has not opposed the request or otherwise disputed the validity

25    of the warrant or the factual accuracy of its contents.  Furthermore, had Klahn disputed the fact

26    that a warrant was issued or the administrative contents of the warrant, that dispute would not be

27    reasonable.  The warrant constitutes a public record the accuracy of which cannot be reasonably

28    questioned to the extent that it denotes the date on which the warrant was issued and the amount at

United States District Court
Northern District of California

17

1   which bail was set.  *Cf. Roy v. Contra Costa County*, No. 15-cv-02672-THE, 2015 WL 5698743,

2   at *2 n.6 (N.D. Cal. Sept. 29, 2015); *Howard v. Dalisay*, No. C 10-05655 LB, 2014 WL 186304,

3   at *1 n.3 (N.D. Cal. Jan. 16, 2014).  The Court therefore takes judicial notice of the facts that a

4   warrant was issued for Klahn's arrest on February 4, 2014, and the warrant recorded that bail had

5   been set at $500,000.

6        Klahn has also requested judicial notice.  However, none of the facts for which he seeks

7   notice constitute something that is "generally known" or that "can be accurately and readily

8   determined."  Fed. R. Evid. 201(b)(1)–(2).  Furthermore, Winn has denied those facts and was not

9   required to address their truth at this procedural stage.  *See* Winn Reply at 4.  The Court therefore

10  denies Klahn's request for judicial notice in its entirety.

11       **C.    Winn's Motion**

12       In her motion, Winn contends that Klahn's two surviving claims against her should be

13  dismissed.  The Court agrees.

14       In his first claim against Winn, Klahn's central allegation is that his arrest was *warrantless*.

15  *See* FAC at 8–9, 11; *see also* Compl. Order at 12.  In the FAC, Klahn uses the word "warrantless"

16  in two different senses.  *See id.*  The first sense is the typical legal usage: Klahn alleges that Winn

17  directed Klahn's arrest be effectuated without a warrant having first been issued by a judicial

18  officer.  *See id.* at 11, 30.  The second sense pertains to service, i.e., Klahn alleges that the officers

19  who arrested him did not present a warrant to him.  *See id.* at 8–9, 30.  Regardless of this

20  confusion, Klahn has failed to state a claim that Winn directed a warrantless arrest.

21       As a factual matter, the Court has taken judicial notice that a warrant was issued for

22  Klahn's arrest on February 4, 2014—four days before the date of Klahn's arrest.  *See* RJN at 5.

23  Klahn has not disputed the validity of this warrant or the date on which it was issued.  Therefore,

24  Klahn has failed to state plausible claim that Winn directed that Klahn be arrested before the

25  issuance of a warrant.

26       To the extent that Klahn asserts that his arresting officers failed to present a warrant to

27  him, he cites no authority supporting the proposition that such service is required under the Fourth

28  Amendment.  Indeed, the Supreme Court has explained that "[t]he Fourth Amendment says

United States District Court
Northern District of California

nothing specific about the formalities in exercising a warrant's authorization . . . ." *United States v. Banks*, 540 U.S. 31, 35 (2003). Although there *might* be a fourth amendment right to be presented with a search warrant at the time a home is searched, *see United States v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2007), Klahn failed to cite and the Court failed to discover authority for the proposition that the failure of an arresting officer to present an arrest warrant constituted a violation of the Fourth Amendment.

Furthermore, a court in the Eastern District of California reviewed a claim analogous to that asserted by Klahn. *See Salat v. Pirotto*, No. 2:14-cv-01468-MCE-AC, 2015 WL 164442, at *5 (E.D. Cal. Jan. 13, 2015), *report and recommendation adopted Salat v. Pirotto*, No. 2:14-cv-01468-MCE-AC, 2015 WL 640925 (E.D. Cal. Feb. 13, 2015). In *Salat*, the plaintiff claimed that, when he turned himself in to police, he requested and was denied a copy of his arrest warrant, which rendered the arrest an unlawful violation of the plaintiff's fourth amendment rights. *Id.* The Eastern District court dismissed the claim, finding, "Plaintiff does not dispute the validity of his arrest warrant, and he points to no authority supporting the proposition that any right to be presented with an arrest warrant upon request is secured" by the Fourth Amendment. *Id.*

Klahn's second claim against Winn also fails. Prosecutors are entitled to absolute immunity from 42 U.S.C. § 1983 claims for actions that fall within the scope of a prosecutor's role as an advocate for the state. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 420, 427 (1976). That "[a]bsolute immunity extends to acts associated with the judicial phase of the criminal process that move a case through the judicial process." *Jianjun Xie*, 2013 WL 812425, at *5 (citing *Imbler*, 424 U.S. at 430).

Furthermore, assuming *arguendo* that Winn acted as a witness in the bail hearing, she is protected by absolute immunity from civil claims as a testifying government official. On that point, *Briscoe* is instructive. *See Briscoe*, 460 U.S. at 342–46. There, the Supreme Court held that a police officer was absolutely immune from any claim arising from the officer's testimony at trial, including the claim that the officer committed perjury. *See id.* at 345–46. Stating "that immunity analysis rests on functional categories, not on the status of the defendant," the Supreme Court reasoned that the testifying police officer performed the same functions as other witnesses,

*United States District Court*
*Northern District of California*

was subject to the same process and oath, and could be prosecuted for perjured testimony. *Id.* at 342. The Supreme Court further reasoned that public policy considerations supported the absolute immunity of government officials from liability under 42 U.S.C. § 1983 because it could undermine their contribution to the judicial process and "the effective performance of their other public duties." *Id.* at 343. Moreover, in reaching its conclusion, the Supreme Court repeatedly analogized the absolute immunity of a testifying police officer to that enjoyed by a prosecutor performing her duties as an advocate for the government. *See id.* at 343–44 (citing *Imbler*, 424 U.S. at 425, 427, 428 n.27).

Thus, read together, *Buckley*, *Imbler*, and *Briscoe* stand for the proposition that, during a judicial phase of the criminal process, arguing as an advocate or testifying as a witness entitles a prosecutor to absolute immunity from civil claims related to those in-court statements. Both of those functions, advocating for the state and testifying as a witness, are integral to the judicial process. Therefore, whether her statements constituted advocacy or testimony, Winn is absolutely immune from Klahn's constitutional claims arising from the bail hearing.[10]

### D. Alameda County's Motion

#### 1. The Court Treats Klahn's Constitutional Claims as Alleged Under § 1983

Alameda County contends that all of Klahn's federal constitutional claims were brought improperly under the provisions themselves, not 42 U.S.C. § 1983. Alameda County is incorrect—the Supreme Court has held that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). Accordingly, the Court finds that Klahn's claims brought under constitutional provisions are not procedurally improper.

---

[10] The Supreme Court's decision in *Kalina* does not alter this analysis. There, the Supreme Court recognized that a prosecutor is not absolutely immune from suit arising from sworn statements made in support of an application for an arrest warrant. *Kalina*, 522 U.S. at 130–31. The Supreme Court explained that an application for an arrest warrant "is a distinct and essential predicate for a finding of probable cause," and that the function performed was that of a complaining witness. *Id.* at 130. As Winn points out, Klahn does not allege that she testified as a witness complaining of criminal conduct before the initiation of the criminal process, but rather as a witness for the government during a bail hearing. *See* Winn Reply at 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2. Klahn's Fourth Amendment Claim

Klahn claims that Alameda County violated his fourth amendment rights by failing to provide him with a warrant when he was booked at the Santa Rita Jail. This claim fails.

As explained above, the Supreme Court has recognized that the Fourth Amendment does not set forth a time, place, or manner in which an arrest warrant must be served. *See Banks*, 540 U.S. at 35. Furthermore, Klahn has failed to cite authority for the proposition that the Santa Rita Jail, a detaining facility that did not effectuate the seizure of Klahn's person, must present him with the warrant for his arrest upon his request. Klahn has likewise failed to address Alameda County's argument that it did not cause any alleged deprivation of Klahn's fourth amendment rights. Rather, Klahn's argument in support of this claim pertains only to the police officers who arrested him. *See* Opp'n to Cnty. at 2–3. Klahn has therefore failed to assert a legal basis for a fourth amendment claim against Alameda County and forfeited the opportunity to do so. The claim is dismissed with prejudice.

### 3. Klahn's Sixth Amendment Claim

Klahn claims that Alameda County violated his sixth amendment rights by failing to provide him with three phone calls, which prevented him from contacting and obtaining counsel. Alameda County argues that, at the time of this alleged violation, Klahn's sixth amendment right to counsel had not yet attached. Cnty. Mot. at 9. Alameda County is correct.

Although failure to allow a criminal defendant to contact an attorney by telephone might implicate the Sixth Amendment in some circumstances, the right to counsel only attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," and a defendant has "no sixth amendment right to place a phone call to his attorney" before that point. *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (citations and quotation marks omitted). Klahn has failed to cite authority for the claim that the violation of California statutory rights for phone calls upon arrest implicates the right to counsel under the Sixth Amendment. *See* Opp'n to Cnty. at 4–5. Therefore, Klahn's sixth amendment claim fails as a matter of law and it is dismissed with prejudice.

### 4. Klahn's Eighth Amendment Claim

Klahn claims that Alameda County violated the Eighth Amendment by subjecting him to cruel and unusual punishment.  Alameda County argues that, because Klahn's detention in Santa Rita Jail preceded his conviction, his eighth amendment rights had not yet attached.  Alameda County is correct.

The Eighth Amendment applies to criminal punishment, not conditions of pretrial detention.  *See Ingraham v. Wright*, 430 U.S. 651, 666–67 (1977).  Specifically, it "circumscribes the criminal process . . . [by] limit[ing] the kinds of punishment that can be imposed on those *convicted* of crimes . . . ."  *Id.* at 667.  As the Supreme Court explained in *Ingraham*, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."  *Id.* at 671 n.40; *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."); *Lee*, 250 F.3d at 686 ("[P]retrial detainees are accorded no rights under the Eighth Amendment.  Instead, their rights arise under the Due Process Clause of the Fourteenth Amendment." (citations omitted)).  Because Klahn's detention in Alameda County took place before his trial and conviction, his eighth amendment claim fails as a matter of law and it is dismissed with prejudice.[11]

### 5. Klahn's Fourteenth Amendment Claims

Klahn asserts three separate claims for due process violations under the Fourteenth Amendment.  He also references his right to equal protection.  The Court addresses each of these claims in turn.

---

[11] The Court also notes that, in opposing Alameda County's motion, Klahn stated that his eighth amendment claim "is specific to Monterey County and not Alameda County . . . ."  Opp'n to Cnty. at 3.  Although Klahn argued that Alameda County's violation of his California statutory rights led to the violation of his Eighth Amendment rights by Monterey County, Klahn's statement constitutes a forfeiture of the claim against Alameda County.

United States District Court
Northern District of California

a.   Warrantless Arrest Claim

Klahn claims that his arrest was warrantless and, pursuant to California statutes, his rights to be presented with a warrant or to be taken before a magistrate within 48 hours of his arrest were violated.  This claim fails.

As explained above, the Court has taken judicial notice of the arrest warrant issued prior to Klahn's arrest.  Therefore, his arrest was not *warrantless*—a magistrate had determined that there was probable cause supporting Klahn's arrest and a warrant was issued.[12]  Likewise, Klahn has cited nothing to support his assertion that Alameda County was required to present him with the warrant for his arrest.  Thus, the sole question pertaining to this claim is whether Alameda County's failure to take Klahn before a magistrate within 48 hours—as required by California Penal Code § 825(a)—constitutes a cognizable claim under the Fourteenth Amendment.  Klahn has failed to demonstrate that it is.

While the federal Constitution recognizes a due process right to be taken before a magistrate within 48 hours of a warrantless arrest, i.e., an arrest without a prior judicial determination of probable cause, *see County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991), the Court has not discovered a case in which a federal due process right was recognized for failing to bring a person—who was arrested after a warrant was issued—before a magistrate within a 48-hour period.  To the contrary, one court in this district has observed that 42 U.S.C. § 1983 does not impose civil liability for the violation of California Penal Code § 825.  *See Leach v. Santa Clara Cnty. Bd. of Sup'rs*, C 94-20438 JW, 1995 WL 7935, at *7 (N.D. Cal. Jan. 4, 1995) (citing, *inter alia*, *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990)).  Thus, the Court dismisses this claim with prejudice.  The Court therefore need not address Alameda County's challenge to this claim: that the 48-hour period set forth in California Penal Code § 825(a) did not expire while Klahn was in Alameda County's custody.

b.   Right to Telephone Calls Claim

Klahn claims that Alameda County violated his due process rights by failing to provide

---

[12] The Court expresses no opinion on the propriety of that probable cause determination.

United States District Court
Northern District of California

him with three phone calls as required by California law.[13]  In its order reviewing the FAC, the Court found this claim sufficient, without prejudice to any argument raised by Alameda County. *See* FAC Order at 9.  Alameda County does not address this claim directly in its briefing. However, Alameda County argues that each of Klahn's fourteenth amendment claims failed to meet the requirements of *Monell*.  The Court agrees.

As the Court stated in its order reviewing the FAC, California law requires that arrestees be given the opportunity to place three telephone calls "[i]mmediately upon being booked and, except where physically impossible, no later than three hours after arrest."  Cal. Penal Code § 851.5(a)(1); *see* FAC Order at 9.  The Ninth Circuit has held that this statute creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Carlo v. City of Chino*, 105 F.3d 493, 497–98, 500 (9th Cir. 1997).  Klahn's First Amended Complaint plainly alleges a violation of that protected interest.

Because Klahn alleges that his protected interest in making three phone calls was violated by Alameda County, the Court considers whether this claim meets the requirements set forth by the Supreme Court in *Monell*.  *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc).  Recently, the Ninth Circuit explained the two-pronged inquiry for establishing municipal liability under 42 U.S.C. § 1983.  *See id.* at 1075–76.

First, "to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury."  *Id.* at 1073 (citing *Monell*, 436 U.S. at 694).  The Court considers "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Id.* at 1075 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (internal quotation marks omitted).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  The Ninth Circuit has explained:

---

[13] The Court notes that, with respect to Alameda County, Klahn's 42 U.S.C. § 1983 claim relates exclusively to its failure to provide him with a phone call.  *See* FAC at 55–56.  The Court therefore considers Klahn's citation to 42 U.S.C. § 1983 a statutory basis for asserting this alleged violation of his fourteenth amendment rights.

United States District Court
Northern District of California

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

Klahn alleges that, while he was detained at the Santa Rita Jail, booking, intake, and duty officers denied his requests to make a phone call in violation of California Penal Code § 851.5. FAC at 14–15.  Klahn alleges that all the officers involved in his intake and booking denied him his right to a phone call.  *Id.* at 15.  The following day, he asked a duty officer if he could make a phone call and "he was told that booking did not set up a pin number so he would not be able to make any calls."  *Id.*  When Klahn asked how to acquire a PIN, the officer told him "it was not possible."  *Id.*  Two days later, Klahn again requested a phone call, and a duty "officer said he could do nothing about intake not assigning him a pin number to use the phone."  *Id.* at 16.

According to his allegations, Klahn has arguably identified a single standard operating procedure that constitutes a policy: during the booking process, Santa Rita Jail assigns detainees a PIN for making phone calls.  When Klahn was booked, the intake and booking officers failed to assign a PIN to him in accordance with that policy.  The failure to assign Klahn a PIN caused the deprivation of his protected interest in making phone calls upon his detention in Santa Rita Jail.  Thus, it was not the policy of assigning detainees a PIN during booking that caused Klahn's injury; Klahn's injury was caused when officers at the Santa Rita Jail violated Alameda County's policy.

Klahn does allege that officers continued to violate his rights by continuing to refuse, because of the lack of a PIN, to allow him to place a phone call.  Construed most favorably to Klahn, he alleges that his deprivation of rights resulted from a lack of proper training.  These allegations are also insufficient because the second prong of entity liability under *Monell* requires Klahn to "demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'"  *Castro*, 833 F.3d at 1076 (quoting *City of*

United States District Court
Northern District of California

1    *Canton*, 489 U.S. at 392).  The deliberate indifference standard is objective: the plaintiff must

2    demonstrate that facts available to policymakers put them on actual or constructive notice that a

3    policy is substantially certain to result in a violation of a citizen's constitutional rights.  *See id.*

4         There are no facts alleged that put those who put the policy in place—which required the

5    issuance of a PIN—on notice that it would result in the failure to provide detainees with timely

6    phone calls.  Moreover, the bare allegation of insufficient training is not sufficient: "the need for

7    more or different training [must be] so obvious, and the inadequacy so likely to result in the

8    violation of constitutional rights, that the policymakers of the [municipality] can reasonably be

9    said to have been deliberately indifferent to the need."  *Id.* (quoting *City of Canton*, 489 U.S. at

10   390).  Nothing in Klahn's allegations suggests that Alameda County policymakers were

11   indifferent to an obviously foreseeable violation of the constitutional rights of detainees like him.

12   Therefore, Klahn has failed to allege facts sufficient to state a due process claim "that is plausible

13   on its face."  *See Iqbal*, 556 U.S. at 663.  Accordingly, the Court dismisses Klahn's claim that his

14   due process right to telephone calls was violated with leave to amend.

15              c.   Right to Medical Care Claim

16        Klahn claims that Alameda County violated his due process right to medical care.

17   Alameda County contends that Klahn's allegations fall short of establishing the elements of a

18   proper due process claim under *Monell*.  The Court agrees.

19        The Ninth Circuit has explained that, "[w]ith regard to medical needs, the due process

20   clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody

21   ha[ve] the established right to not have officials remain deliberately indifferent to their serious

22   medical needs.'"  *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting

23   *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)) *overruled on other grounds by Castro*, 833

24   F.3d at 1076.  Here, Klahn alleges that he has diabetes and, while he was detained, he suffered

25   from a severe rise in his blood sugar, dizziness, swelling in his feet and hands, dehydration, and

26   difficulty focusing.  FAC at 16, 42.  Preventing such ailments constitutes a serious medical need.

27   Thus, the question is whether Alameda County was indifferent to those needs.

28        When a plaintiff alleges that a municipality violated his constitutional right to receive

26

medical care while in custody, he must establish deliberate indifference in accordance with the requirements set forth in *Monell*. *See Gibson*, 290 F.3d at 1187; *see also Castro*, 833 F.3d at 1076–77. As explained above, the *Monell* inquiry has two prongs.

First, Klahn must allege that a policy or custom—"a deliberate choice of action"—of Alameda County caused his denial of adequate medical care. *See Castro*, 833 F.3d at 1073. Here, Klahn has failed to establish a causal link between an Alameda County custom or policy and the allegation that a doctor did not administer medication to him in a timely manner. Rather, Klahn has alleged that Santa Rita Jail officers "failed to take sufficient action to get a doctor to see Klahn and prescribe his needed medication" with "willful and malicious intent." FAC at 36. A willful and malicious denial of access to a doctor is indicative of individualized conduct, not an Alameda County standard operating procedure.

Likewise, Klahn's allegations regarding the medical care that he received from nurses and other employees fall short of providing a factual basis from which the Court can infer that Alameda County has a policy of denying or delaying the provision of medical care to detainees. In essence, Klahn alleges that, over more than three days, various employees of the Santa Rita Jail informed him that no doctors were available to provide him with medication for his diabetes. *See id.* at 14–16, 40. Klahn also alleges that California laws and regulations require detention facilities to provide medical services to detainees, including access to a physician. *See id.* at 38–41. Klahn then alleges that the inadequate medical treatment he received violated those California laws and regulations, and it resulted from Alameda County's failure to train Santa Rita Jail employees sufficiently. *See id.* However, Klahn does not identify expressly any Alameda County policy or custom related to medical care, and his "failure to train" allegations constitute the kind of improper conclusory statements and legal conclusions that are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678.

Even were the Court to reach the second prong of the *Monell* inquiry, Klahn has failed to demonstrate that Santa Rita Jail employees adhered to a policy with deliberate indifference to his constitutional rights. *See Castro*, 833 F.3d at 1076. To the extent that he alleges that Alameda County failed to train those employees sufficiently, he has not established that there was an

27

United States District Court
Northern District of California

obvious need for more or different training to which policymakers were deliberately indifferent. *See id.* In sum, the claim that Klahn's fourteenth amendment right to medical care was violated falls short of establishing entity liability as required by *Monell*. Accordingly, the claim is dismissed with leave to amend.

### d. Equal Protection Claim

To state a claim for a violation of the Fourteenth Amendment's Equal Protection Clause, Klahn must allege that Alameda County acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *See Lee*, 250 F.3d at 686. Alameda County argues that, to the extent Klahn alleged that his equal protection rights were violated, Klahn failed to establish that he is a member of a protected class. Cnty. Mot. at 14. In response, Klahn stated that he does not allege that he is a member of a protected class. Opp'n to Cnty. at 7. Any equal protection claim against Alameda County is dismissed with prejudice.

### 6. Alameda County's Other Arguments

Alameda County asserted two other arguments in its motion to dismiss. The Court considers each in turn.

First, Alameda County contends that Klahn has failed to allege claims under state law. The Court agrees. It is clear from the FAC that Klahn only refers to state laws as support for his federal claims. Therefore, the Court need not address Alameda County's other arguments pertaining to state law claims.[14]

Second, Alameda County contends that Klahn's FAC fails to comport with the requirements of Federal Rule of Civil Procedure 8 and moves for a more definite statement under Rule 12(e). Because all of Klahn's claims are dismissed, the Court need not consider these contentions. However, since Klahn has been granted leave to amend two of his fourteenth amendment claims against Alameda County, the Court again encourages him to use short, continuously numbered paragraphs if he chooses to file an amended complaint.[15]

---

[14] In Klahn's improper response to Alameda County's Reply, he states that "the other Amendments and Penal Code Claims are substantiating the fact that the Defendant's in this action have violated the rights of this Plaintiff pursuant to 42 U.S.C 1983." Dkt. no. 48 at 11.
[15] The Court observes that Klahn filed a Second Amended Complaint on February 6, 2017. *See*

28

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Anna Winn's Motion to Dismiss in its entirety and DISMISSES Klahn's claims against her with prejudice.  The Court also GRANTS Defendant Alameda County's Motion to Dismiss.  The Court DISMISSES WITH PREJUDICE the following claims against Alameda County: Klahn's claims for violations of the Fourth, Sixth, and Eighth Amendments; Klahn's due process claim for failing to present a warrant to him or take him to a magistrate during his detention; and Klahn's claim that his equal protection rights were violated.  The Court DISMISSES WITH LEAVE TO AMEND Klahn's due process claims for alleged violations of his rights to telephone calls and medical care.  Should Klahn choose to amend these claims, he must file a third amended complaint within THIRTY (30) days of this Order.  The third amended complaint must include the correct caption and civil case number and the words THIRD AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the previous complaint, the third amended complaint must include all the claims Klahn wishes to present against Alameda County.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  It must also address the deficiencies discussed above, and must *not* do any of the following: (1) incorporate material from any prior complaint by reference; (2) include claims against Winn or any other defendants who were dismissed from this action in the Court's prior orders; (3) include claims against Alameda County that the Court dismissed with prejudice in this Order; or (4) add claims against the County of Monterey or any other party without first filing a motion in accordance with Federal Rule of Civil Procedure 15(a)(2) and obtaining leave from the Court.

**IT IS SO ORDERED.**

Dated: February 13, 2017

_____

JOSEPH C. SPERO
Chief Magistrate Judge

dkt. no. 62.  This filing was improper and will not be considered.  *See* Fed. R. Civ. P. 15(a)(1)(B). Furthermore, because it purported to add claims against the County of Monterey, it violated the Court's instruction given at the January 27, 2017, hearing.  Klahn may only seek to add new claims or parties through a proper motion.  *See* Fed. R. Civ. P. 15(a)(2).